UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LAWRENCE VENTIMIGLIA

                       Plaintiff,                          10 Civ. 3148 (PKC)

       -vs-                                   MEMORANDUM
                                                  <u>AND ORDER</u>

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

          Plaintiff Lawrence Ventimiglia seeks judicial review of a final decision by

the Commissioner of Social Security (the "Commissioner") finding that plaintiff has been

receiving the correct amount of retirement insurance benefits provided for in Title II of

the Social Security Act ("the Act").  Plaintiff asserts that the decision of the

Administrative Law Judge ("ALJ") was "not supported by substantial evidence on the

record."  (Compl. p. 3.)  Specifically, he alleges that (1) the Social Security

Administration ("SSA") owes the plaintiff benefits withheld and (2) his monthly benefits

were reduced without justification and should be restored to a higher amount.  (Docket

No. 3.)  Defendant has moved for judgment on the pleadings pursuant to Rule 12(c), Fed.

R. Civ. P.  For the reasons explained below, the defendant's motion is granted.


I.  BACKGROUND

    A.  Plaintiff's Initial Retirement

          Plaintiff was born on November 10, 1938.  (R. 31.)  In August 2000, two

months before turning 62 years old, plaintiff filed an application for Social Security

retirement benefits.  (R. 31-32.)  His application stated that he was the president of his

own insurance sales business and that he would be transferring the business to his wife,

Nancy Ventimiglia, after which he did not plan to work for the company.  (R. 32.)  He

attained 62 years of age on November 10, 2000.  (R. 31.)  The original date of his

entitlement is January 2001, which is when he began receiving benefits.  (R. 16.)

Because he retired 36 months prior to full retirement age, plaintiff was entitled to a

reduced monthly benefit.

   B.  Social Security Administration's Finding That Plaintiff Was Not Retired

              Plaintiff's wife applied for spousal retirement benefits on plaintiff's

account on August 27, 2003.  (R. 33-35.)  During the interview portion of the process, a

SSA employee noted that plaintiff's wife was "not running [the] company" based on her

inability to answer "the [simplest] questions."  (R. 42.)  In a letter dated October 29,

2003, the SSA informed plaintiff that they received new and material evidence and would

be reopening his retirement application.  (R. 44.)  The SSA requested that plaintiff submit

his tax returns and statements from insurance companies regarding the gross receipts and

commissions that his business received.  (Id.)

              On November 30, 2004, the SSA notified plaintiff that, after reopening his

application, it found that he had not established that he was retired as of January 2001

and he had continued to perform substantial services in the sales and management of the

company as a licensed Insurance agent.  (R. 56.)  Plaintiff argued that the earnings he

received from the company came from residual income from renewals.  (R. 62.)  The

SSA believed, however, that plaintiff put his business in his wife's name to misleadingly

appear retired, though the company's income was directly attributable to his sales.  (Id.)

The SSA stated it would assign the income to plaintiff's Annual Earnings Test, which would deduct money from his benefit payment based on the amount of earnings he made in excess of the annual exempt amount, until he reached full retirement age in January 2004.  (Id.)  On or about March 28, 2005, the SSA notified plaintiff that he had not established he was retired and they would not pay him the benefits as he requested.  (R. 65.)

The SSA raised plaintiff's monthly benefit amount based on the later retirement date, but determined that he owed the SSA repayment of benefits for the period during which it believed he was not yet retired.  In a letter dated April 29, 2005, plaintiff was notified that beginning April 2005, he would receive $1,345 per month in benefits, but owed the SSA $22,146 from overpayment of benefits for the period before January 2004.  (R. 24, 755.)  The plaintiff requested reconsideration, and the SSA notified plaintiff on September 13, 2005 that the agency maintained its determination that he was not retired until January 2004.  (R. 63-68.)  To recoup the overpayment, the agency withheld plaintiff's benefits beginning December, 2005.  (Exhibit A to the Declaration of Tom Ferraro dated August 3, 2011.)  On September 20, 2005, plaintiff requested a hearing before an ALJ to appeal the SSA's decision.  (R. 69.)  In September 2006, plaintiff was informed that he still owed $7,389.30 in overpaid benefits, but would receive $1,393 per month in benefits beginning in October.  (R. 756.)  This monthly benefit amount was changed beginning November 2006, to $1,187 per month, because the agency withheld $206 of his monthly amount until November 2009 to correct the balance of $7,183.30 due in overpayments.  (R. 757.)

C.  ALJ Cohen's Decision Finding That Plaintiff Was Retired and Subsequent
    Reduction in His Benefit Amount

Plaintiff appeared before ALJ Jay Cohen on October 31, 2007 and was not represented by counsel.  (R. 20.)  On November 6, 2007, ALJ Cohen reversed the SSA's decision, finding that plaintiff had been bona fide retired since his original application in November 2000 and that he had not been overpaid benefits.  (R. 17-25.)

In a letter dated December 10, 2007, the SSA notified the plaintiff that due to ALJ Cohen's decision, he would be reimbursed for months previously withheld from him.  (R. 730.)  The SSA also changed plaintiff's earning amounts for 2001 through 2004 to zero.  (R. 728.)  Because plaintiff would be paid benefits for every month from January 2001, he became ineligible for the higher full-retirement-age benefit amount and his monthly benefit would decrease.  (R. 730).  He would no longer have benefits deducted, however, for months in which he exceeded the earnings threshold.  (Id.)  As a consequence of the agency's withholding of benefits based on the now-reversed finding that he had been overpaid, the SSA owed plaintiff $10,325.70 for benefits due to him through November 2007.  (Id.)  Beginning December 2007, he would receive benefits totaling $1,262 per month.  (Id.)

On February 15, 2008, plaintiff filed a request for reconsideration of the SSA's decision that his monthly benefit would decrease.  (R. 739.)  In the Notice of Reconsideration, dated March 28, 2008, the SSA affirmed that plaintiff was receiving the maximum benefit amount.  (R. 737-40.)  The notice explained that full retirement age for individuals born between January 2, 1938 and January 1, 1939 is 65 years and two months.  (R. 739.)  The letter stated that if an individual receives benefits before full retirement age, the benefit would be reduced by 5/9 of one percent for each month he

retired before full retirement age.  (Id.)  If the beneficiary works after retirement, but before full retirement age of 65 years and two months, any months in which he is not entitled to a full Social Security Benefit because he exceeds the earnings threshold are not counted into his benefit reduction.  (Id.)  The notice stated that based on plaintiff's original date of entitlement, January 2001, his PIA had been reduced by 36 months of entitlement prior to his full retirement age of 65 years and two months, but that his earnings exceeded the threshold in 22 of those 36 months, therefore his PIA would only be reduced by 14 months.  (R. 740.)  When ALJ Cohen later determined that plaintiff had been bona fide retired since the original date of entitlement, the PIA was adjusted back to 36 months of reduction for early retirement.  (Id.)

D.   ALJ Wieselthier's Decision Affirming Plaintiff's Monthly Benefit Amount

Plaintiff filed a request for a hearing by an ALJ to reconsider the SSA's decision that he was receiving the highest possible benefit.  (R. 741.)  Plaintiff disagreed with the determination because "[w]hen the [SSA] [declared] that I was overpaid and [stopped] my monthly benefits, it forced me to go back to work – So in fact I did not retire and I should receive benefits as if I retired at 65."  (Id.)

Plaintiff appeared at a hearing before ALJ Sol Wieselthier on June 23, 2008, and was again not represented by counsel.  (R. 766.)  Plaintiff testified that he was "refused these benefits from the beginning and [was] put [] back into the workforce."  (R. 768.)  He stated that he is "receiving benefits after the fact," not early benefits.  (Id.)  He further said that after the SSA decided he was not retired, he continued to work for "better than two years."  (Id.)

In a decision issued on November 10, 2008, ALJ Wieselthier affirmed that plaintiff was receiving the highest possible benefit amount based on the earnings posted on his record, his January 2001 date of entitlement and his date of birth.  (R. 12-16.)  On November 11, 2008, plaintiff requested that the Appeals Council review the ALJ's decision.  (R. 752.)  On March 10, 2010, the Council denied plaintiff's request for review and ALJ Wieselthier's decision became the final decision of the Commissioner.  (R. 7-10.)  The Appeals Council explained that after the ALJ upheld the determination that plaintiff had been entitled to benefits as of January 2001, his monthly benefit amount would return to the lower dollar figure with 36 months of reduction instead of the higher figure using 14 months of reduction.  (R. 8.)  The letter stated that plaintiff could not receive retroactive retirement benefits effective January 2001, with 36 months of reduction, and afterward receive an increased benefit beginning January 2004, with 14 months of reduction.  (Id.)

E.  Plaintiff's Appeal to This Court

On April 14, 2010, plaintiff, proceeding pro se, filed a timely action with this Court seeking review of the Commissioner's final decision, alleging he was owed $13,110 and demanding a jury trial.  (Docket No. 2.)  On August 30, 2010, defendant answered the Complaint and on September 17, 2010, moved for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P.  (Docket Nos. 7, 10, 11.)  On October 6, 2010, plaintiff filed a motion to reject the Motion to Dismiss and requested a jury trial.  (Docket No. 12.)[1]  On November 5, 2010, defendant informed the court that it would not file a reply and would rest on the initial memorandum of law.

---

[1] This Court will treat the motion to reject the Motion To Dismiss as a response.

## II.  APPLICABLE LAW

### A.  Standard of Review

Under Rule 12(c), Fed. R. Civ. P., a movant is entitled to judgment on the pleadings only if the movant establishes "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law."  Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990) (citations omitted).  Judgment on the pleadings is appropriate where no material facts are in dispute, and "where a judgment on the merits is possible merely by considering the contents of the pleadings."  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted).[2]

The court may not review the Commissioner's decision de novo.  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998)).  If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  See 42 U.S.C. § 405(g) ("The findings of the Commissioner, . . . if supported by substantial evidence, shall be conclusive, and where a claim has been denied . . . the court shall review only the question of conformity with [the] regulations . . . .");  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citing Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998)).  Therefore, a court's review involves two levels of inquiry.  Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999).  First, the court must review "whether the Commissioner applied the correct legal standard."  Id.; see Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).  Second, the court must decide whether the Commissioner's decision is supported by substantial evidence.  Tejada, 167 F.3d at 773.

---

[2] The plaintiff here is proceeding pro se and his complaint will be construed liberally and interpreted "to raise the strongest arguments that [it] suggest[s]."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotations omitted).

The ALJ's "[f]ailure to apply the correct legal standards is grounds for reversal." Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004) (quoting Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).  The ALJ's factual findings supported by substantial evidence are "binding" on this court; however, "where an error of law has been made that might have affected the disposition of the case," this court cannot simply defer to the ALJ's factual findings.  Id.  Legal error may include "failure to adhere to the applicable regulations."  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citing Schaal v. Apfel, 134 F.3d 496, 504-05 (2d Cir. 1998)).

Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam).  Relevant evidence includes inferences and conclusions drawn from evidentiary facts.  Rivas v. Barnhart, No. 01 Civ. 3672, 2005 WL 183139, at *18 (S.D.N.Y. Jan. 27, 2005) (citations omitted).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner."  Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).  When reviewing the evidence supporting the Commissioner's position to determine whether it is substantial, the court should review the record as a whole, and "not look at that evidence in isolation[,] but rather [] view it in light of other evidence that detracts from it."  Alston v. Sullivan, 904 F.2d 122, 126 (2d. Cir. 1990) (citation omitted).  However, even if there is substantial evidence contrary to the Commissioner's position, the Commissioner's determination will not be disturbed.

<u>See</u> <u>DeChirico v. Callahan</u>, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides).

When reviewing the factual record, it is not this court's role "to resolve evidentiary conflicts . . .[nor] to appraise the credibility of witnesses, including the claimant"; instead, those are judgments for the Commissioner to make.  <u>Carroll v. Sec'y of Health and Human Services</u>, 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted).

Before deciding if the Commissioner's determination is supported by substantial evidence, courts must first be satisfied that the claimant received "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act."  <u>Echevarria v. Sec'y of Health and Human Servs.</u>, 685 F.2d 751, 755 (2d Cir. 1982) (quoting <u>Gold v. Sec'y of Health, Educ. and Welfare</u>, 463 F.2d 38, 43 (2d Cir. 1972)).  The ALJ has an affirmative duty to fully and fairly develop an administrative record.  <u>Echevarria</u>, 685 F.2d at 755.  This duty arises from the essentially non-adversarial nature of a benefits proceeding where the Secretary is not represented.  <u>Schauer v. Schweiker</u>, 675 F.2d 55, 57 (2d Cir. 1982).  "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop [the record] 'even when the claimant is represented by counsel.'"  <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999) (quoting <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir. 1996)).  To this end, "the reviewing court must make a searching investigation of the record to ensure that" the ALJ protected the claimant's rights.  <u>Robinson v. Sec'y of Health and Human Servs.</u>, 733 F. 2d 255, 258 (2d Cir. 1984) (citation omitted).  "If the reviewing court determines that a claimant did not receive a 'fair and adequate hearing' before the ALJ, . . . it must remand

the case to the Commissioner." <u>Watson v. Astrue</u>, No. 08 Civ. 1532, 2009 WL 6371622, at * 5 (S.D.N.Y Feb. 4, 2009) (citing <u>Echevarria</u>, 685 F.2d at 755).

     B.  Standard of Eligibility for Old-Age Retirement Insurance Benefits

      Old-age retirement benefits under Title II are payable to a fully insured individual who has attained sixty-two and has filed an application for old-age insurance benefits. <u>See</u> 42 U.S.C. § 402(a); 20 C.F.R. § 404.310.  The Act provides that every individual who is fully insured, has attained the age 62 and has filed an application for old-age insurance benefits is entitled to retirement insurance benefits beginning with the first month in which he meets the aforementioned requirements. 42 U.S.C. § 402(a).

      Section 202(a) of the Act provides that a retirement benefit shall be equal to an individual's primary insurance amount ("PIA") if the benefits begin at full retirement age.  Full retirement age for retirement insurance benefits for individuals born between January 2, 1938 and January 1, 1939 is 65 years and two months.  42 U.S.C. § 416(l); 20 C.F.R. § 404.409(a).

      The Act provides for a reduction of the PIA by one reduction factor ("RF") for every month prior to full retirement age which an individual has been entitled to benefits.  20 C.F.R. § 404.410(a); <u>see</u> Programs Operation Manual ("POMS") RS 00615.010.  The PIA is reduced by 5/9 of one percent for each of the first 36 months prior to full retirement age.  20 C.F.R. § 404.410(a).  The formula used to calculate the monthly benefit amount is the PIA multiplied by (180 minus the RF), then divided by 180.  POMS RS 00615.101.

If an individual's earnings exceed a proscribed amount after he begins collecting benefits but before he reaches full retirement age, the SSA will reduce his monthly benefits by the amount of the excess earnings.  20 C.F.R. § 404.415(a); 20 C.F.R. § 404.434(b)(1).  However, excess earnings will not reduce benefits after the individual reaches full retirement age.  20 C.F.R. § 404.435(a)(3).  Effective at full retirement age, the months in which an individual's monthly benefit had been subject to a deduction because of work earnings no longer reduce the PIA.  20 C.F.R. § 404.412.

III.  DISCUSSION

    A.   ALJ's Decision

ALJ Wieselthier concluded that plaintiff was receiving the maximum amount of retirement benefits based on ALJ Cohen's earlier decision that plaintiff had been retired since January 2001.  (R. 12-16.)  Further, because plaintiff had been retired as of January 2001, the benefits previously withheld because his earnings exceeded the threshold in 2001, 2002 and 2003 were credited back to his record.  (Id.)  The ALJ found that because plaintiff was born on November 10, 1938, he reached full retirement age in January 2004.  (Id.)  Because he began receiving retirement benefits in January 2001, ALJ Wieselthier found that his PIA should be reduced by 36 months.  (Id.)  The ALJ found that based on plaintiff's earnings after his work deductions had been credited back to his record, his date of birth and the date his benefit payments began, plaintiff is receiving the highest possible benefit.  (Id.)

B.  Amount of Monthly Benefits

        Plaintiff argues that he is entitled to a higher benefit amount.  He asserts variously that he should receive an "increase in his benefits" (R. 733), an additional $207 per month (Docket No. 2), and an "increase in benefits by [] 13.33%."  (Docket No. 12.) Although plaintiff does not specifically explain his rationale, his claim appears to be that he should receive higher monthly benefits with a PIA reduced by 14 RF, based on a January 2004 retirement date, instead of 36 RF.  He also contends, however, that he should still receive benefits dating back to January 2001.  Plaintiff asserts that because his benefits were withheld for 22 months when the SSA incorrectly determined that he was overpaid, he should still be eligible for increased benefits at full retirement age under 20 C.F.R. § 404.412.  (R. 733.)

        The facts surrounding plaintiff's claim are not in dispute.  The ALJ relied on substantial evidence that plaintiff became entitled to benefits in January 2001, 36 months prior to his full retirement age, based on plaintiff's own claims and ALJ Cohen's finding.  (R. 16.)  When plaintiff initially applied for benefits on August 14, 2000, plaintiff stated that it is "my plan to retire completely."  (See R. 37-41.)  When the SSA reopened plaintiff's application, he asserted that he was retired as of December 2000.  (R. 46.)  When plaintiff appealed the SSA's finding that he was not fully retired, plaintiff stated that he had been retired since 2000.  (R. 62.)  Plaintiff did not appeal ALJ Cohen's decision in his favor that found him to have retired as of January 2001.  Only after plaintiff was notified that he would no longer be eligible for an increase in his monthly benefit amount for retiring at full retirement age did he challenge the computation of his benefit rate.

In deciding how many RF to apply, ALJ Wieselthier appropriately relied on ALJ Cohen's finding that plaintiff had been retired since January 2001.  (R. 15.)  The Act states than an individual's PIA is reduced by the number of months prior to full retirement age the individual begins to receive benefits, but after reaching full retirement age, a new PIA is calculated, excluding months in which benefits were reduced by work earnings are credited back to the PIA.  20 C.F.R. § 404.410(a); 20 C.F.R. § 404.412.  ALJ Wieselthier considered that, prior to ALJ Cohen's finding, the SSA excluded 22 months from the reduction in plaintiff's PIA, which resulted in a monthly benefit reduced by 14 RF effective January 2004.  (R. 8, 15, 739-40.)  The ALJ explained that because plaintiff is now being paid for the 22 months previously withheld, he has received benefits for 36 months prior to full retirement age and is no longer eligible for the increased PIA with 14 RF.  (R. 15.)  Plaintiff cannot receive benefits dating back to January 2001 and also be entitled to an increased benefit amount as though he had retired in January 2004.  The ALJ applied the correct legal standard in holding that plaintiff's PIA must be reduced by 36 RF because he has been paid benefits due to him as of January 2001.  (Id.)

Plaintiff argues that he was "forced" out of retirement when he returned to the workforce to repay the overpayment.  (R. 768.)  Plaintiff claims that because his benefits were stopped for two years, he should receive the increased benefits that he would be entitled to if he had not retired until age 65.  (R. 741.)  However, plaintiff only returned to work after full retirement age.  (R. 8.)  Earnings made after an individual reaches full retirement age are not deducted as excess earnings and are not used in reducing the monthly benefit amount.  See 20 C.F.R. §§ 404.434, 404.435, 404.412.  Therefore, plaintiff's work activity after he reached full retirement age was not deducted

as work earnings and is not relevant in determining his PIA.  The ALJ properly

considered the evidence and regulations to confirm plaintiff's monthly benefit amount.

        Alternatively, plaintiff proposes that the reduction of his PIA by 5/9 of one

percent for each month he retired before full retirement age should be offset by an

increase to his PIA by 5/9 of one percent for each month he did not receive early benefits

due to the agency's incorrect determination of his retirement age.  (Docket No. 12.)  This

argument fails to take into account that, although plaintiff's benefits were withheld for a

time, the decision by ALJ Cohen resulted in the agency repaying all of his early benefits.

(R. 752, 754.)  Therefore, plaintiff's argument fails because the SSA's payment of past-

due benefits resulted in zero months which plaintiff has not received the early benefits

that he is entitled to receive.

        Plaintiff separately argues that he should receive "full regular benefits"

(R. 752),  "as if [he] retired at 65" (R. 741; see also Docket No. 2), and "regular

retirement benefits" when he was 62 years of age (Docket No. 9).  The Act states that an

individual cannot receive his full PIA if he retired before reaching full retirement age.  20

C.F.R. § 404.410 ("benefits are reduced if entitlement begins before the month you attain

full retirement age").  Because plaintiff's full retirement age is 65 years and two months,

he could not have received regular benefits at age 62 or any time before 65 and two

months.

        Plaintiff described the decrease in his benefit amount as "changing my

status of full retirement back to early retirement."  (R. 754.)  A full benefit amount is the

unreduced PIA an individual would receive if he retired at his full retirement age.  20

C.F.R. § 404.409(a).  Although plaintiff had previously been entitled to a higher PIA at

full retirement age, this would not be "full retirement" status because it was still reduced by 14 RF.

Although neither the ALJ nor Appeals Council set forth each mathematical step used in calculating plaintiff's monthly benefit amount, the information on the record supports their findings.  The formula used to calculate the reduced PIA is the PIA multiplied by (180 minus the RF), then divided by 180.  See POMS RS 00615.101.  Plaintiff's unreduced PIA for December 2007 through November 2008 was $1,698.  (R. 740.)  Based on plaintiff's 36 months of early retirement, his reduced PIA is ((1698 x (180-36))/180), equaling $1,358.40.  Plaintiff's health insurance premium of $96.40 is then deducted.  (See R. 758.)  This leaves plaintiff with a monthly amount of $1,262, the amount the SSA determined.  (R. 762.)  Accordingly, the ALJ relied on substantial evidence and used the correct legal standard in holding that plaintiff is receiving the highest possible benefit amount.

C.  Past-Benefits Due

Plaintiff first alleged in his letter to the Appeals Council that he was owed more than the $10,325 the SSA paid him due to ALJ Cohen's decision that he had not been overpaid $22,146.  (R. 754.)  He contended that he was underpaid $7,521, the difference between how much was withheld from him before ALJ Cohen's decision, $17,846, and the $10,325 he received in repayment.  He also claims he was underpaid $2,484 in Medicare payments.  (Id.)  When plaintiff filed his complaint with this court, he asserted that the SSA owed him $13,110 in total.  (Docket No. 2.)

The Court requested further briefing on this issue in an Order dated July 5, 2011.  The SSA submitted a letter, along with the Declaration of Tom Ferraro, a Program

Analyst for the SSA, explaining the agency's calculation of the plaintiff's past-benefits owed.  In determining the amount owed, the SSA calculated the difference between the amount plaintiff was paid for each month and how much he should have been paid based on 36 RF.  (Ferraro Decl.)  Plaintiff's response to the Court's request for further briefing makes clear that his disagreement with the agency's calculation is based upon his argument that he is entitled benefits based upon retirement at full retirement age, or alternatively a lesser reduction for early retirement due to the agency's initially incorrect finding.  The agency correctly concluded that because plaintiff's calculations were based upon an unreduced monthly benefit amount he was not entitled to past-due benefits as he claimed, and correctly calculated the amount due.  (See R. 8.)

IV.  CONCLUSION

For the foregoing reasons, the SSA's motion for judgment on the pleadings (Docket No. 10) is GRANTED.  Plaintiff's motion (Docket No. 12) is DENIED.  Counsel for defendants is directed to transmit copies of all unreported decisions cited herein to plaintiff.  The Clerk is directed to close the case.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 28, 2011

16